UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHYRN COLLUM, | CASE NO. 1:17CV766 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE<br>GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1],<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Kathryn Collum ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") erred by failing to find that her bipolar disorder and anxiety disorder were not severe impairments and he erred by failing to afford appropriate weight to the opinions of her treating physician, Dr. Schroeder, and her treating mental health sources, Dr. Feier and Advanced Practice Nurse ("APN") Fuller. ECF Dkt. #15. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's case in its entirety WITH PREJUDICE.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI, alleging disability beginning October 31, 2008, but she amended her onset date by motion to May 29, 2015. ECF Dkt. #11 ("Tr.") at 154-157, 167.[2] Plaintiff alleged disability due to Stage 1 skin cancer, Type II diabetes, chronic venous insufficiency, osteoarthritis, acid reflux, left eye cataract, mood disorders, bipolar disorder, chronic depression,

---

[1]On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

and attention deficit disorder. *Id*. at 174. The Social Security Administration ("SSA") denied her applications initially and upon reconsideration. *Id.* at 67-98. Plaintiff requested a hearing before an ALJ, which was held on September 21, 2016. *Id*. at 34, 100.

On November 4, 2016, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Tr. at 15-26. On April 11, 2017, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. She filed a brief on the merits on August 13, 2017 and Defendant filed her merits brief on October 12, 2017. ECF Dkt. #s 15, 17.

## II.     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his November 4, 2016 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 19, 2015, her application filing date, and he found that since that date, Plaintiff had the severe impairments of: diabetes mellitus; chronic venous insufficiency; osteoarthritis of the knees bilaterally; gastroesophageal reflux disease ("GERD"); obesity; carpal tunnel syndrome ("CTS"); and frozen left shoulder. Tr. at 18. He found that Plaintiff's impairments of bipolar disorder and anxiety disorder were not severe impairments. *Id*.

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. Tr. at 20. After considering the record, the ALJ found that Plaintiff had the RFC to perform work with the following limitations: lifting/carrying up to 10 pounds occasionally and less than 10 pounds frequently; standing and walking up to 2 hours and sitting up to 6 hours per 8-hour workday; pushing and pulling as much as Plaintiff could lift and carry; frequent use of hand and foot controls bilaterally; occasionally reaching overhead on the left; frequent handling and fingering bilaterally; frequently climbing ramps and stairs; occasionally climbing ladders, ropes or scaffolds; never kneeling, crouching or crawling; and avoidance of unprotected heights, moving mechanical parts, and operation of a motor vehicle. *Id*. at 21.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff could not perform her past relevant work, but she could perform jobs existing in significant numbers in the national economy, such as the jobs of semi-skilled sedentary personnel clerk, semi-skilled sedentary sorter, and semi-skilled sedentary appointment

clerk. Tr. at 24-25. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to SSI from March 19, 2015, through the date of his decision. *Id.* at 34.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V. LAW AND ANALYSIS

### A. STEP TWO NON-SEVERE IMPAIRMENTS

Plaintiff first asserts that the ALJ erred by failing to find that her bipolar disorder and anxiety disorder were severe impairments. ECF Dkt. #15 at 15-18. The Court finds that the ALJ applied the correct legal standards and substantial evidence supports his determination that Plaintiff's bipolar disorder and anxiety disorder were not severe impairments.

At step two of the sequential steps for evaluating entitlement to social security benefits, a claimant must show that he or she suffers from a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe when it "does not significantly limit [one's] physical or mental ability to do basic work activities." §404.1521(a).

At step two, the term "significantly" is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there

-4-

is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir.1985). The Sixth Circuit has construed the step two severity regulation as a "*de minimis* hurdle*" in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p (July 2, 1996).

Once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987). Once a claimant clears Step Two of the sequential analysis, the ALJ is required to consider all of his or her impairments, severe and non-severe, at every subsequent step of the sequential evaluation process. *See Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008)(ALJ's failure to identify an impairment as severe was "legally irrelevant" because the ALJ found other impairments to be severe at Step Two, which allowed the ALJ to consider all impairments in the later steps in the process).

Here, in asserting that her bipolar and anxiety disorders are severe impairments, Plaintiff asserts that she takes medications for these impairments, she received counseling and medication management from psychiatric sources for these impairments, and mental status examinations at times reported that she had poor recent memory, increased depression, decreased energy, and impaired attention and concentration. ECF Dkt. #15 at 15-16, citing Tr. at 361, 394, 396, 463, 465, 471, 557, 563, 569, 581, 587, 606. Plaintiff points out that when the ALJ added limitations to the hypothetical individual of jobs requiring only simple, routine tasks and occasional changes in the routine work setting, the VE responded that such an individual could perform only one occupation, which was contradictorily semi-skilled and simple and routine. ECF Dkt. #15 at 17-18, citing Tr. at 60, 64-65.

The Court finds that the ALJ applied the proper legal standards at Step Two and substantial evidence supports the ALJ's Step Two determination as to the non-severity of Plaintiff's bipolar disorder and anxiety disorder. The ALJ cited to the proper regulation in his Step Two finding and he evaluated the evidence of record and found that these impairments caused no more than mild restrictions in Plaintiff's daily living activities, social functioning and concentration, persistence, or pace, and they caused no episodes of decompensation. Tr. at 18. While Plaintiff points to medical

evidence supporting a contrary finding, the standard of review for this Court is whether substantial evidence supports the ALJ's determination. *Buxton*, 246 F.3d at 773. As explained below, substantial evidence supports the ALJ's Step Two determination.

In his decision, the ALJ specifically addressed Plaintiff's bipolar disorder and anxiety disorder at Step Two of the sequential evaluation. Tr. at 18. He found that these impairments were not severe because they did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. *Id*. In support, the ALJ cited to numerous medical records showing essentially normal mental status examinations and he noted that while Plaintiff reported low energy at times, she had no racing thoughts, irritability, elation, or euphoria and her sleep was fine. *Id*. at 18, citing Tr. at 387, 464, 563. In particular, the ALJ cited to medical records dated April 23, 2015, March 22, 2016, where Plaintiff presented at her mental health counseling and medication management appointments and was found to be oriented, pleasant, and cooperative, and she had logical thought processes, normal speech, no abnormal thoughts, good insight and judgment, normal recent and remote memory, and sustained attention span and concentration. Tr. at 18, citing Tr. at 387-388, 394, 563-564. The ALJ also cited to medical records in which Plaintiff reported that her anxiety was low, her mood was stable and good, an increase in a medication had helped, and she felt that she no longer needed therapy. *Id.* at 18, citing Tr. at 388, 394, 522, 563, 582. The ALJ also noted Plaintiff's GAF scores of 70-75 designated by APRN Fuller, which were indicative of only mild symptoms or slight impairment. *Id.* at 18, citing Tr. at 395-396, 472.

The ALJ also addressed the medical source statements by APRN Fuller, which were co-signed by Dr. Feier, and which contained extreme limitations for Plaintiff based upon her bipolar

-6-

and anxiety disorders. Tr. at 19, citing Tr. at 361-362, 557-558. The ALJ attributed little weight to these opinions, reasoning that the extreme limitations in them were not consistent with the objective evidence of record. Tr. at 19. He also found that the evidence did not show that Dr. Feier even examined Plaintiff, and even if she did, no adequate explanation was provided for the extreme limitations that were opined. *Id.* The ALJ cited to Plaintiff's testimony and her reports to doctors and counselors that she could handle her own personal care and finances, she had hosted a number of people at her home and she enjoyed hosting the holidays, she attended church every Sunday, and she had no problems getting along with others. *Id.* at 19, citing Tr. at 522, 564, 582. The ALJ also noted that while some of the medical records showed that Plaintiff had impaired concentration and attention, they were not consistent in order to require a limitation in her mental RFC because other records reported sustained attention and concentration. *Id.* at 19, citing Tr. at 471, 523, 564, 570.

Plaintiff contends that the opinions of APRN Fuller and Dr. Feier are uncontradicted in the record and the ALJ ignored the fact that APRN Fuller was the same person who examined and reported on Plaintiff's mental health status examinations as to these impairments, and she adjusted Plaintiff's medications and provided reports of Plaintiff's work-related abilities based upon these impairments. ECF Dkt. #15 at 16. However, the ALJ did not ignore APRN Fuller's opinions or her status as a treating APRN because he specifically acknowledged her opinions and findings in his decision and he noted that APRN Fuller was treating Plaintiff for these impairments. Tr. at 19. He further explained that he gave her opinions little weight because "few, if any" consistent objective findings supported the opined extreme functional limitations. *Id.* at 19. The ALJ then cited to APRN Fuller's own treatment records in which she reported that Plaintiff's mental examinations showed that she was oriented, had normal speech, logical thought process, no evidence of perceptual or delusional perceptions, a stable mood, full affect, sustained concentration and attention, and good judgment and insight. *Id.* at 19, citing Tr. at 361-362, 395-396, 471, 557-558, 568-569. Thus, the ALJ found that APRN Fuller's opinions were contradicted by her own treatment notes. The ALJ also noted Plaintiff's reports at some examinations with APRN Fuller and her social worker that a medication dosage increase had helped improve her mood and a social worker had indicated that

Plaintiff's symptoms were in partial remission and she was coping better. *Id*. at 19, citing Tr. at 522, 564-565.

Plaintiff further asserts that even if the ALJ did not err in finding her bipolar disorder and anxiety non-severe, the ALJ erred because he did not consider the effects of these non-severe impairments on her RFC. ECF Dkt. #15 at 16, citing SSR 96-8p. Plaintiff cites to caselaw from this District holding that while the Courts held that the ALJs in those cases did not commit Step Two errors in finding claimant impairments to be non-severe, they nevertheless erred by not addressing claimants' mental impairments in the RFC determinations. ECF Dkt. #15 at 17, citing *Collins v. Comm'r of SSA*, No. 1:15CV2305, 2016WL4729299 (N.D. Ohio Sept. 12, 2016) and *Fusco v. Colvin*, No. 1:15CV2487, 2016 WL 5793202 (Sept. 15, 2016).

Defendant acknowledges that the ALJ's RFC for Plaintiff lacks mental work-related limitations. ECF Dkt. #17 at 17. Defendant also acknowledges that the regulations require an ALJ to consider non-severe impairments in assessing a claimant's RFC. *Id.* at 18, citing 20 C.F.R. § 416.945(a)(2)(2016). However, Defendant contends that the the ALJ in this case did not include limitations from Plaintiff's non-severe bipolar disorder and anxiety disorder in his RFC for Plaintiff because the evidence of record did not support including such limitations. ECF Dkt. #17 at 18.

The Court finds that the ALJ's decision indicates that the ALJ did consider Plaintiff's non-severe impairments of bipolar disorder and anxiety in determining his RFC for Plaintiff. He specifically noted at the end of his Step Two finding that the "paragraph B" criteria that he determined were not an RFC assessment and were used only for purposes of Steps 2 and 3. Tr. at 20. He further indicated that the RFC assessment at Steps 4 and 5 were more detailed and his RFC for Plaintiff reflected the degree of limitation that he found in "paragraph B" for Plaintiff. *Id*. At Step Four, the ALJ reiterated Plaintiff's impairments, which included bipolar disorder and mood disorders, chronic depression, and attention deficit disorder. *Id*. at 21. He then made no mental limitations for Plaintiff in his RFC.

Substantial evidence supports the ALJ's determination that Plaintiff had no RFC limitations based upon her bipolar disorder and anxiety disorder. The overall record, as detailed above and cited to by the ALJ, shows that Plaintiff had relatively normal mental status examinations, GAFs

indicative of mild or slight symptoms, Plaintiff reported that an increase in her medication dosage was helping, and some of her daily living activities contradicted a mental RFC limitation, including hosting holiday parties, attending church weekly, and indicating that she got along with others. This constitutes substantial evidence to support the ALJ's determination not to include any mental work-related limitations in Plaintiff's RFC.

### B. MEDICAL OPINIONS AND RFC

In conjunction with the Step Two finding and the ALJ's RFC, Plaintiff also asserts that the ALJ erred in the weight that he attributed to the opinions of her treating physician, Dr. Schroeder, and the opinions of APRN Fuller and Dr. Feier. ECF Dkt. #15 at 18-24. The Court find that the ALJ properly evaluated the opinions and substantial evidence supports the ALJ's treatment of those opinions.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. §§ 416.945(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 416.945(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 416.945(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5. Social Security Ruling ("SSR") 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations. *Id*.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not

-9-

inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons"[3] for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* 20 C.F.R. § 416.920. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

-10-

C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

### 1. Dr. Schroeder's Opinion

Dr. Schroeder opined on March 1, 2016 that Plaintiff could lift up to 10 pounds occasionally and frequently due to increased pain in her legs, knees, and feet due to knee and ankle osteoarthritis and diabetic neuropathy. Tr. at 425. She further opined that Plaintiff had standing and walking limitations based upon the increased pain that Plaintiff experienced in her legs, knees and ankles. *Id*. She opined that Plaintiff could rarely climb, balance, stoop, crouch, kneel or crawl due to knee pain. *Id*. Dr. Schroeder also indicated that Plaintiff could occasionally reach and push/pull objects, and she could rarely perform fine or gross manipulation due to the burning pain in her hands. *Id*. at 426. She further opined that Plaintiff had restrictions around heights, moving machinery, temperature extremes, pulmonary irritants and noise due to the imbalance caused by her leg, knee and ankle pain, and she noted that an ankle brace had been prescribed for Plaintiff. *Id.* Dr. Schroeder further recommended that Plaintiff needed a sit/stand/walk alternative, and Plaintiff needed to elevate her legs at will at 45 degrees. *Id.* She indicated that Plaintiff had severe pain which interfered with her concentration, caused her to be off-task, and would cause absenteeism. *Id*. Finally, Dr. Schroeder opined that Plaintiff would require additional unscheduled rest periods beyond the standard lunch and two 15-minute breaks. *Id.* She noted that Plaintiff's bipolar disorder worsened all of the above limitations. *Id.*

The ALJ indicated in his decision that while Dr. Schroeder was a treating source, he afforded her opinion only "some" weight because the assessment was only "somewhat" consistent with the evidence. Tr. at 23. He found that the evidence supported Dr. Schroeder's limitations for lifting, carrying, pushing and pulling, standing/walking, never kneeling, crouching or crawling, and the avoidance of unprotected heights, moving mechanical parts and operating a motor vehicle. *Id*. at 23. However, the ALJ found that the evidence of record did not support Dr. Schroeder's more

-11-

extreme limitations, such as Plaintiff needing to elevate her legs, alternating positions at will, and taking additional breaks beyond that given during the workday. *Id*.

In support of his finding that the evidence did not support Dr. Schroeder's more extreme limitations for Plaintiff, the ALJ cited to Dr. Schroeder's own June 23, 2015 treatment note which indicated that Plaintiff had an essentially normal physical examination with no edema in the extremities and Plaintiff denied numbness and tingling in her hands. *Id*. at 23, citing Tr. at 446. The ALJ also cited to follow-up examinations by Dr. Schroeder that were reported as "unchanged" on March 1, 2016, March 22, 2016, and June 22, 2016, with Plaintiff reporting numbness and tingling in her extremities at only one of these examinations. *Id*. at 23, citing Tr. at 544, 561, 590. Moreover, earlier in his decision, the ALJ cited to examination findings that Plaintiff had a normal gait. *Id*. at 22, citing Tr. at 350. He also cited to evidence of only mild, non-pitting edema of Plaintiff's feet and legs in March of 2015 with Plaintiff's complaining of numbness and tingling, but physical examination findings showing intact protective sensation, palpable pulses, and intact strength. *Id*. at 22, citing Tr. at 374. The ALJ additionally cited to an examination in the same month where Plaintiff had a steady gait, equal bilateral strength, no evidence of edema, but pain with passive extension of the right knee. *Id.* at 22, citing Tr. at 380. He noted that Plaintiff was advised to avoid driving or operating machinery while on her medication. *Id*. The ALJ also cited to a July 2015 follow-up examination where Plaintiff had additional pain with range of motion on the left, but he noted that additional examinations thereafter showed unchanged findings with no edema. *Id.* at 22, citing Tr. at 438, 458. This evidence constitutes substantial evidence to support the ALJ's treatment of Dr. Schroeder's opinion.

Plaintiff complains that the ALJ did not fully evaluate the factors of 20 C.F.R. § 416.927 in considering Dr. Schroeder's opinion and he failed to identify why he was not giving controlling weight to her opinion. ECF Dkt. #15 at 21. Upon review of the ALJ's decision, as outlined above, the Court finds that the ALJ properly applied the treating physician rule to Dr. Schroeder's opinion and substantial evidence supports his decision to attribute less than controlling and only some weight to that opinion because Dr. Schroder's more extreme limitations for Plaintiff were not supported by her own treatment notes and the medical evidence of record. The ALJ identified Dr. Schroeder as

-12-

a treating source and outlined her limitations for Plaintiff. Tr. at 23. He explained that he did not find support for Dr. Schroeder's more extreme opinions because the evidence of record did not support them and he cited to evidence in Dr. Schroeder's treatment notes that showed primarily normal physical examination findings and a steady gait. *Id*. He further found upon review of the evidence that the evidence did not support Dr. Schroeder's more extreme limitations for Plaintiff. *Id*. While he did not discuss every factor of 20 C.F.R. § 416.927(c) in his decision, he was not required to do so. *See Francis v. Comm'r of Soc. Sec*., 414 Fed. App'x 802, 804 (6th Cir. 2011)(the social security regulations "expressly require only that the ALJ's decision include "'good reasons'" for the weight afforded a treating physician's opinion, "not an exhaustive factor-by-factor analysis."). In any event, the ALJ addressed many of the regulatory factors as he noted that Dr. Schroeder was a treating source, and he discussed the nature of the treatment relationship by citing to Dr. Schroeder's treatment notes, which outlined Plaintiff's reports and Dr. Schroeder's physical examinations of Plaintiff. Tr. at 23. As explained more fully above, the ALJ also discussed the supportability and consistency factors of 20 C.F.R. § 416.927(c) as he specifically found and explained that some of the limitations opined by Dr. Schroeder were consistent with the evidence of record, and he found and explained why some of her more extreme limitations were not supported by the record. *Id*.

For these reasons, the Court finds that the ALJ properly applied the treating physician rule to Dr. Schroeder's opinion and substantial evidence supports his decision to attribute less than controlling weight and only some weight to her opinion.

### **2.     APRN Fuller and Dr. Feier's Opinions**

Plaintiff asserts that the ALJ made similar errors in evaluating the opinions of APRN Fuller and Dr. Feier, contending that the ALJ performed no analysis as to whether they were treating sources and he ignored the evidence of Plaintiff's poor memory, increased depression, decreased energy, increased sleep, impaired concentration, fluctuating anxiety, and increased isolation. ECF Dkt. #15 at 23-24. For the following reasons, the Court finds that the ALJ properly weighed these opinions and substantial evidence supports his determination as to Plaintiff's mental impairments and lack of mental RFC for Plaintiff.

-13-

On February 23, 2015, APRN Fuller completed a medical source statement regarding Plaintiff's mental capacity to perform basic work-related tasks. Tr. at 361. She opined that Plaintiff could constantly maintain her appearance. *Id*. at 362. She further opined that Plaintiff could occasionally: follow work rules; use judgment; respond appropriately to changes in routine settings; function independently without redirection; deal with work stress; understand, remember and carrying out detailed, but not complex job instructions; behave in an emotionally stable manner; relate predictably in social situations; and manage funds/schedules. *Id.* at 361-362. APRN Fuller further opined that Plaintiff could rarely: maintain attention and concentration for extended periods of more than 2-hour segments; maintain regular attendance and be punctual within customary tolerances; deal with the public; relate to co-workers; interact with supervisors; work in coordination with or proximity to others without being distracted; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out complex job instructions; socialize; and leave her home on her own. *Id.* APRN Fuller identified Plaintiff's bipolar disorder and anxiety not otherwise specified as the diagnoses supporting her findings. *Id*. at 362. She also indicated that Plaintiff had been under the care of the practice "since 9/16/15," which postdates the signing of the medical source statement and as such is apparently a typographical error, as the January 7, 2017 medical source statement completed by APRN Fuller indicated that Plaintiff had been a patient since September 16, 2014. *Id*. at 362, 607. Dr. Feier co-signed this medical source statement. *Id.* at 362.

On April 4, 2016, APRN Fuller completed another medical source statement regarding Plaintiff's mental capacity to perform basic work-related tasks. Tr. at 558. She opined that Plaintiff could constantly: function independently without redirection; maintain her appearance; and manage funds/schedules. *Id*. at 557-558. She further opined that Plaintiff could frequently: maintain regular attendance and be punctual within customary tolerances; socialize; behave in an emotionally stable manner; relate predictably in social situations; and leave her home on her own. *Id*. APRN Fuller further opined that Plaintiff could occasionally: follow work rules; use judgment; maintain attention and concentration for extended periods of 2-hour segments; respond appropriately to changes in

routine settings; deal with the public; relate to co-workers; interact with supervisors; work in coordination with or proximity to others without being distracted or without being distracting; deal with work stress; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out complex job instructions; understand, remember and carrying out detailed, but not complex job instructions; and understand, remember and carry out simple job instructions. *Id.* at 557-558. APRN Fuller identified Plaintiff's bipolar disorder and anxiety as the diagnoses supporting her findings. *Id*. at 558. Dr. Feier co-signed this medical source statement and wrote in that she was the collaborative psychiatrist and had not personally examined Plaintiff. *Id.* at 558.

On January 7, 2017, after the ALJ's decision, APRN Fuller completed another medical source statement regarding Plaintiff's mental capacity to perform basic work-related tasks. Tr. at 607. She opined that Plaintiff could constantly: work in coordination with or proximity to others without being distracting; understand, remember and carry out simple job instructions; maintain her appearance; manage funds/schedules; and leave her home on her own. *Id.* at 606-607. APRN Fuller further opined that Plaintiff could frequently: use judgment; maintain regular attendance and be punctual within customary tolerances; interact with supervisors; understand, remember and carrying out detailed, but not complex job instructions; socialize; and behave in an emotionally stable manner. *Id*. She further opined that Plaintiff could occasionally: follow work rules; maintain attention and concentration for extended periods of 2-hour segments; respond appropriately to changes in routine settings; deal with the public; relate to co-workers; function independently without redirection; work in coordination with or proximity to others without being distracted; deal with work stress; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out complex job instructions; and relate predicably in social situations. *Id.* APRN Fuller identified Plaintiff's bipolar disorder and anxiety as the diagnoses supporting her findings. *Id*. at 607. Dr. Feier co-signed the medical source

-15-

statement and again indicated that she was a collaborative physician and had not examined the patient. *Id.*

When concluding that Plaintiff's bipolar disorder and anxiety disorder were not severe impairments at Step Two, the ALJ addressed the first two medical source statements of APRN Fuller, which were co-signed by Dr. Feier. Tr. at 19. He noted the findings and limitations in these statements and he noted that Dr. Feier co-signed the statements. *Id*. The ALJ explained that he was giving little weight to the conclusions in the medical source statements because they were not consistent with the medical evidence, there was no evidence that Dr. Feier saw Plaintiff, and there was no explanation or support for the extreme limitations in the treatment records of APRN Fuller or in the other objective evidence. *Id*. He cited to some of those treatment notes and the fact that Plaintiff reported significant improvement in her mood, she indicated that her mood was "not bad," and Plaintiff's GAF scores were between 70-75, indicative of mild to slight limitations. *Id*.

Plaintiff asserts that the ALJ should have conducted an analysis in his decision of whether APRN Fuller and Dr. Feier were treating sources. ECF Dkt. #15 at 22. She contends that Dr. Feier identified herself as the collaborative psychiatrist for APRN Fuller concerning Plaintiff's care and because Dr. Feier had access to the centralized record system, she and APRN Fuller are treating sources and their opinions should have been treated as such. *Id.* Plaintiff further notes that APRN Fuller is the advanced practice nurse who treated her impairments, which included prescribing and adjusting her medications. *Id.* Plaintiff cites to SSA regulations promising that ALJs will evaluate every medical opinion that they receive and she cites to Social Security Ruling 06-03p which generally notes that even though some medical sources, such as nurse practitioners and physician assistants who are not "acceptable medical sources" under the Social Security regulations, their opinions are important because they are assuming a greater role in the growing area of managed health care. *Id*. at 23.

The Court finds that while the ALJ did not conduct an analysis as to whether APRN Fuller was a treating source, he did specifically state that she was treating Plaintiff for mental impairments and he refers to the findings in her treatment notes. Tr. at 19. While it is true, as Plaintiff points out in her brief and in citing to SSR 06-03p, that nurse practitioners and other professionals are

assuming greater roles in patient care, SSR 06-03p also states that nurse practitioners are not "acceptable medical sources" and therefore their opinions are not subject to treating source evaluation or controlling weight. While this SSR has been rescinded, the rescission date is effective for claims filed on or after March 27, 2017. *See* SSR 06-03p, rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, effective 3/27/2017. Thus, in this case, the ALJ was not required to evaluate the medical source statements as treating source evaluations or attribute controlling weight to the opinions because nurse practitioners are identified as "other sources" under 20 C.F.R. § 416.913(d) and are not considered "acceptable medical sources," whose opinions can be afforded controlling weight. *See* SSR 06-3p.

As SSR 06-03p points out, the social security regulations do not explicitly address how to consider opinions from these "other sources," but due to the greater role of nurse practitioners and other sources in treating and evaluating claimants, functions that were previously performed primarily by doctors and psychologists, opinions from these "other sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-03p. The ALJ did just that in the instant case, as explained above, by acknowledging APRN Fuller's opinions, considering them, and citing to evidence in the record, including APRN Fuller's own treatment notes, to support his finding that the opinions were entitled to only little weight.

In addition, as to Plaintiff's assertion that Dr. Feier is a treating psychiatrist whose opinions are entitled to controlling weight, the ALJ did indicate in his decision that there was no evidence that Dr. Feier saw Plaintiff. Tr. at 19. The Court does not find error in this statement as Plaintiff fails to refute it and in fact acknowledges that Dr. Feier was a collaborative psychiatrist with access to a centralized record system. ECF Dkt. #15 at 22-23. Further, Dr. Feier specifically noted when she signed the medical source statement that she was a collaborative psychiatrist who had not personally examined Plaintiff. Tr. at 558.

Nevertheless, the ALJ evaluated the medical source statements provided by APRN Fuller and co-signed by Dr. Feier. Tr. at 19. He identified the medical source statements and set forth the conclusions of these opinions in his decision. *Id.* He indicated that he attributed little weight to

-17-

these opinions because the extreme limitations were not consistent with the objective evidence of record and adequate explanation was lacking for the extreme limitations. *Id.* Contrary to Plaintiff's assertion, the ALJ did note Plaintiff's reports to APRN Fuller and other counselors that she had low energy, poor recent memory, occasional difficulty with concentration, sleep difficulties, and tendency to isolate herself. Tr. at 18, citing Tr. at 387, 471-472, 569. However, he cited to other records in which Plaintiff reported that her sleep was fine, her anxiety was low, and her mood was not bad at times and even good at others. Tr. at 18, citing Tr. at 387, 385, 463, 563. He further cited to essentially normal mental status examinations, but for the reports of occasional poor recent memory and problems with concentration and attention. *Id.* at 18, citing Tr. at 471. The findings on the mental status examinations indicated good appearance, a cooperative attitude, normal speech, logical, organized thought process, no unusual thought content or perceptions, stable or comfortable mood, full affect, and fair to good insight and judgment. *Id.* at 471. The ALJ cited to Plaintiff's report to Nurse Practitioner Chen that her mood was "not bad." Tr. at 19, citing Tr. at 402. He also cited to APRN Fuller's mental status examination on April 23, 2015 in which she found that Plaintiff was cooperative, oriented, had normal speech, logical, organized thought processes, no unusual thought content, a stable mood, fair motivation, sustained attention and concentration, and good insight and judgment. Tr. at 19, citing Tr. at 395. And while noting Plaintiff's reports of poor recent memory, he cited to other findings in the treatment notes that Plaintiff had normal recent and remote memory and sustained attention span and concentration. *Id.* at 18, citing Tr. at 464. He also cited to APRN Fuller's assigned GAF scores for Plaintiff in the 70-75 range, which was indicative of only slight to mild symptoms. Tr. at 19, citing Tr. at 395, 472. The ALJ additionally referred to Plainitff's report of significant improvement in her mood after one of her medications was increased as she reported doing well, she was having the best month, she was hosting the holidays for about 12 people, and she was feeling good with a good and stable mood. Tr. at 19, citing Tr. at 522.

While an ALJ is not required to discuss each and every piece of evidence in the record to justify his or her determination, *see, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004), when the opinion of a medical source contradicts the ALJ's limitations in the claimant's RFC, the ALJ "'must give some indication of the evidence upon which he is relying, and

he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.'" *Wolfe v. Colvin*, No. 4:15CV1819, 2016 WL 2736179, quoting *Fleischer v. Astrue*, 774 F.Supp.2d 875, 881 (N.D. Ohio 2011). Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Here, the ALJ considered and addressed the medical source statements and sufficiently explained why he did not adopt the opinions. Substantial evidence supports his determination.

## VI. CONCLUSION

For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.


Date: August 14, 2018         */s/George J. Limbert*
                                                    GEORGE J. LIMBERT
                                                    UNITED STATES MAGISTRATE JUDGE